UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALAYNA D'AMICO, MAX MILLER, BELLA ROBINSON, and BRAM SILBERT, representing themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>CONSORTIUM ON FINANCING HIGHER EDUCATION, THE COMMON APPLICATION INC., SCOIR INC., AMHERST COLLEGE, BARNARD COLLEGE, BOWDOIN COLLEGE, BROWN UNIVERSITY, BRYN MAWR COLLEGE, CARLETON COLLEGE, COLUMBIA UNIVERSITY, CORNELL UNIVERSITY, THE TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, HAVERFORD COLLEGE, JOHNS HOPKINS UNIVERSITY, MACALESTER COLLEGE, MIDDLEBURY COLLEGE, MOUNT HOLYOKE COLLEGE, NORTHWESTERN UNIVERSITY, OBERLIN COLLEGE, POMONA COLLEGE, WILLIAM MARSH RICE UNIVERSITY, SMITH COLLEGE, SWARTHMORE COLLEGE, TRINITY COLLEGE, UNIVERSITY OF CHICAGO, UNIVERSITY OF PENNSYLVANIA, UNIVERSITY OF ROCHESTER, VANDERBILT UNIVERSITY, VASSAR COLLEGE, WASHINGTON UNIVERSITY IN ST. LOUIS, WELLESLEY COLLEGE, WESLEYAN UNIVERSITY, and WILLIAMS COLLEGE,<br><br>          Defendants. | Case No. 1:25-cv-12221-AK |

**<u>NON-SCHOOL DEFENDANTS' REPLY IN SUPPORT OF MOTION TO DISMISS</u>**

## <u>TABLE OF CONTENTS</u>

**Page**

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 3

    I.    Plaintiffs Improperly Attempt to Amend the Complaint and Mischaracterize Non-School Defendants' Statements ....................................................... 3

    II.    Plaintiffs' Opposition Confirms That They Failed to Allege Any Direct Evidence of An Agreement Involving Non-School Defendants............................ 5

    III.    Plaintiffs' Opposition Confirms They Failed to Allege Circumstantial Evidence of An Agreement by Non-School Defendants ....................................... 6

        1.    No Alleged Parallel Conduct by Non-School Defendants......................... 6

        2.    The Opposition's Treatment of "Plus Factors" Does Not Save the Complaint................................................................................................. 9

CONCLUSION.................................................................................................................. 10

CERTIFICATE OF SERVICE .......................................................................................... 11

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Tobacco Co. v. United States*,
    328 U.S. 781 (1946)......................................................................................................7

*Bell Atlantic Corp. v. Twombly*,
    550 U.S. 544 (2007).............................................................................................1, 6, 10

*Car Carriers v. Ford Motor Co.*,
    745 F.2d 1101 (7th Cir. 1984) .......................................................................................4

*Evergreen Partnering Grp v. Pactiv*,
    720 F.3d 33 (1st Cir. 2013)............................................................................................6

*In re Baby Food Antitrust Litig.*,
    166 F.3d 112 (3d Cir. 1999)..........................................................................................5

*In re Broiler Chicken Antitrust Litig.*,
    2019 WL 1003111 (N.D. Ill. Feb. 28, 2019) ........................................................... 6-7

*In re Plasma-Derivative Protein Therapies Antitrust Litig.*,
    764 F. Supp. 2d 991 (N.D. Ill. 2011) ...........................................................................7

*In re Pork Antitrust Litig.*,
    781 F. Supp. 3d 758 (D. Minn. 2025).........................................................................7

*Interstate Cir. v. United States*,
    306 U.S. 208 (1939).......................................................................................................6

*Luthy v. Proulx*,
    464 F. Supp. 2d 69 (D. Mass. 2006) ........................................................................ 4-5

**Rules**

FED. R. CIV. P. 11(b)(3) ......................................................................................................3

## **INTRODUCTION**

Plaintiffs attempt to avoid dismissal by misstating the allegations in the Complaint and the requirements to survive a motion to dismiss a Section 1 claim. Instead of accurately citing their Complaint, Plaintiffs attempt to rewrite it by sprinkling the word "agreed" near references to The Common Application, Inc. ("Common App"), Scoir, Inc. ("Scoir"), and the Consortium on Financing Higher Education ("COFHE") (collectively, "Non-School Defendants"), even though the Complaint contains no such allegations. Dressing up conclusory assertions with new unpled phrasing fails the pleading standard required by *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007).

Plaintiffs' sleight of hand notwithstanding, their Opposition only underscores that the Complaint fails to state a Sherman Act claim against the Non-School Defendants. Plaintiffs concede that they have not alleged any direct evidence of an agreement involving these entities. The only purported "direct evidence" they invoke concerns an alleged agreement among five Ivy League schools that does not implicate the Non-School Defendants. *See* Doc No. 225 at 29–30.

Their circumstantial evidence argument fares no better. Plaintiffs concede that they have not alleged "parallel conduct" by the Non-School Defendants. *See* Doc No. 225 at 34–35. Instead, they argue there is no need to allege parallel conduct in cases of non-competitor conspirators. *See id.* But Plaintiffs misread the cases they cite in support of this proposition. Parallel conduct was never at issue in any of those cases because the courts found *direct* evidence of non-competitors knowingly agreeing to the conspiracy and taking actions in furtherance thereof—facts not alleged here. With respect to the "plus factors," Plaintiffs first try to retrofit a motive to conspire into the Complaint by making the unremarkable observation that the Non-School Defendants support their respective customers or members. While it is true the Non-School Defendants support their customers or members, this obvious fact (which would be true of every trade association or service provider ever) is hardly a "motive" to conspire. And even if it were, the Complaint alleges no such

1

motive.  *See* Doc No. 225 at 40.  Plaintiffs also fail to allege the Non-School Defendants acted against their unilateral self-interests.  The closest Plaintiffs get is a throwaway footnote speculating that the application platforms lacked any "independent commercial purpose" for limiting Early Decision submissions, Doc No. 225 at 41 n.9, but this unsupported assertion (which ignores Non-School Defendants' independent interest in following their members' or customers' instructions), is not the type of plausible allegation this Court need credit.  Critically, Plaintiffs fail to identify any allegation that the Non-School Defendants ever shared Early Decision admit information post-admission—the very mechanism they claim enforces the alleged conspiracy.  *See* Doc No. 1, ¶¶ 109–113.  Their generalized references to COFHE's "information sharing" adds nothing, as the Complaint does not allege that COFHE facilitated sharing of Early Decision admit data among the School Defendants (or, indeed, that COFHE ever held any vote or meeting about Early Decision policy, instituted any rule about Early Decision, designed any Early Decision forms, or coordinated Early Decision applications or policies in any way).  *See* Doc No. 225 at 42–43.  Plaintiffs also expressly disclaim a hub-and-spoke theory as to the Non-School Defendants and misapply various "facilitator" cases that undermine their arguments, as such cases all involve platforms or trade associations who knowingly joined an unlawful agreement—conduct Plaintiffs have not alleged against the Non-School Defendants here.

The Opposition reinforces what the Complaint lays bare: Plaintiffs have not pleaded facts that plausibly show that the Non-School Defendants entered into *any* agreement at all, let alone the horizontal post-admission restraints actually alleged in the Complaint.  Accordingly, the claims against the Non-School Defendants must be dismissed with prejudice.

## <u>ARGUMENT</u>

**I.    Plaintiffs Improperly Attempt to Amend the Complaint and Mischaracterize Non-School Defendants' Statements**

Plaintiffs assert repeatedly that the Non-School Defendants "agreed" to enforce the School Defendants' alleged conspiracy.  But the Complaint contains no such allegations.  Plaintiffs simply fabricated them in their Opposition.  For example, to support their assertion that "Common App and Coalition App . . . have agreed to embed and enforce the ED restraints," Plaintiffs cite 20 paragraphs from the Complaint.  *See* Doc No. 225 at 2 (citing Doc No. 1 ¶¶ 1, 21, 60–61, 80–83, 92–95, 101, 106–09, 122–24).  *Not one* of those 20 paragraphs alleges that Common App or Coalition App agreed to enforce the alleged conspiracy.  Similarly, the Opposition asserts that COFHE is a member of the conspiracy because it "serves as a confidential forum for exchanging admissions data and maintaining commitments, including those underpinning the ED restraints," citing five Complaint paragraphs.  *Id.* (citing Doc No. 1 ¶¶ 22, 81, 108, 118–19).  Yet none of those paragraphs alleges that the School Defendants exchanged admissions data or information about maintaining admission commitments—whether through COFHE or otherwise.  The Opposition is full of similar examples, where Plaintiffs just make up inculpatory assertions about the Non-School Defendants that are not in the Complaint and likely could not be included in their allegations under Federal Rule of Civil Procedure 11(b)(3).  *See, e.g.,* Doc No. 225 at 13 (asserting the platforms "agreed" to prevent any student from submitting more than one Early Decision application at a time, while citing Complaint paragraph 108, which says nothing about an agreement); *id.* at 39 (proffering spurious claims about COFHE, including that "enabling the maintenance of … binding ED is crucial to COFHE's continued existence," without citing any Complaint paragraphs); *id.* at 40 n.8 (claiming that School Defendants would "abandon the Common App and Coalition App if they stopped agreeing to enforce the hands-off agreement"

3

while citing no support).  The Court should not credit these unpled (and false) assertions and phantom citations.

Even worse, Plaintiffs cite to the Non-School Defendants' Motion to Dismiss to assert that "there is no dispute that both platforms have agreed with the Defendants to implement practices intended to lock students into a single school."  *See* Doc No. 225 at 31 (citing Doc No. 222 at 5–6).  This is a blatant misrepresentation.  The very pages Plaintiffs cite *do dispute* this by explaining their failure to "allege that either application platform encourages, assists, or participates in any communications or agreement between School Defendants regarding students' early commitments."  *See* Doc No. 222 at 5–6.  Neither the Complaint nor the Motion to Dismiss alleges that Common App or Scoir agreed with the School Defendants to implement these practices.

Plaintiffs' newly minted theory that Early Decision itself is unlawful is also absent from the Complaint.  The Complaint alleges only a post-admission horizontal agreement among schools not to compete for students already admitted via Early Decision elsewhere.  Doc No. 1 ¶¶ 6, 86–88, 105–13, 116.  It does not allege that the School Defendants entered into a pre-admission agreement to offer Early Decision or that they reached a vertical agreement with the Non-School Defendants regarding the enforcement of such an agreement.  The Opposition attempts to graft these theories precisely because the Complaint contains no facts implicating the application platforms in the alleged post-admission boycott.[1]

Courts reject such efforts to smuggle new factual allegations through an opposition brief.  *See, e.g., Car Carriers v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir. 1984) ("[I]t is axiomatic that the complaint may not be amended by the briefs in opposition to a motion to dismiss.") (quoted

---

[1] To the extent that Plaintiffs are attempting to abandon the post-admission conspiracy alleged in their Complaint by now claiming for the first time in their Opposition that they are challenging the existence of Early Decision itself, *see, e.g.,* Doc No. 225 at 3, that new theory is as implausible as is their original theory. The Non-School Defendants join in the School Defendants' reply brief, which explains why all Defendants are entitled to dismissal.

4

in *Luthy v. Proulx*, 464 F. Supp. 2d 69, 74–75 n.25 (D. Mass. 2006) ("For the purposes of the Motion to Dismiss, this court need only consider the facts and allegations made in the complaint.")). Plaintiffs' attempts to do so cannot save their Complaint from dismissal.

II.    **Plaintiffs' Opposition Confirms That They Failed to Allege Any Direct Evidence of An Agreement Involving Non-School Defendants**

The Opposition confirms that Plaintiffs have not alleged any direct evidence of an agreement involving Non-School Defendants. Plaintiffs identify only one allegation as "direct evidence": the alleged Ivy League Joint Statement. *See* Doc No. 225 at 29–31. That statement has no connection to the Non-School Defendants—it does not reference any of them, and it suggests no action by anyone but "Ivy League institutions." Doc No. 1 ¶ 116. It thus cannot serve as direct evidence of an agreement involving the Non-School Defendants.

Rather than confronting this fatal defect, Plaintiffs try to bootstrap that allegation into their case by asserting that it "strongly supports the *inference* that the remaining defendants adhered to it." *See* Doc No. 225 at 30 (emphasis added). Definitionally, a fact requiring inference is not direct evidence. *See In re Baby Food Antitrust Litig.*, 166 F.3d 112, 118 (3d Cir. 1999) (direct evidence is "explicit and requires no inferences"). Plaintiffs' reliance on speculation underscores their inability to allege the explicit communication required to plead any direct evidence of agreement. *Id*. In any event, even if this particular statement somehow supported an inference that other School Defendants also agreed to the alleged conspiracy, and it does not, Plaintiffs make no attempt to explain how a statement that "All Ivy League institutions will honor" Early Decision (Doc No. 1 ¶ 116) supports the inference that the Non-School Defendants will "honor" Early Decision. It doesn't. Plaintiffs have not alleged any direct evidence that any of the Non-School Defendants entered into the alleged post-admission conspiracy among the School Defendants.

**III.    Plaintiffs' Opposition Confirms They Failed to Allege Circumstantial Evidence of An Agreement by Non-School Defendants**

      **1.    No Alleged Parallel Conduct by Non-School Defendants**

The Opposition also confirms that Plaintiffs have not alleged any circumstantial evidence that the Non-School Defendants entered into the putative horizontal agreement among the School Defendants.  Despite the Supreme Court's directive that a plaintiff without direct evidence can establish a conspiracy through circumstantial evidence only through allegations of parallel conduct with "plus factors," *Twombly*, 550 U.S. at 557, Plaintiffs claim that they "need not show that co-conspirators who are not horizontal competitors engaged in parallel conduct," *see* Doc No. 225 at 34–35, effectively conceding that they pleaded no parallel conduct by the Non-School Defendants.

To support this assertion that they do not need to show parallel conduct, Plaintiffs point to cases finding allegations sufficient against third-party facilitators, but ignore that in each of those cases the relevant court found *direct* evidence of the third-party's agreement to the conspiracy. Because the third party knew about the conspiracy and took an action in furtherance of the alleged agreement, parallel conduct was not required. *Interstate Cir. v. United States*, 306 U.S. 208, 226–27 (1939) (finding that a conspiracy requires a defendant's knowledge and conscious participation). In *Evergreen*, the court upheld allegations that a trade association was aware of conspiratorial member meetings, allowed a conspirator to publish a misleading article, and took other affirmative steps to advance the scheme.  *See Evergreen Partnering Grp v. Pactiv*, 720 F.3d 33, 49 n.4 (1st Cir. 2013).  In *Broiler Chicken*, non-competitor defendant Agri Stats was alleged to sit at the very center of the conspiracy's information-exchange mechanism.  *In re Broiler Chicken Antitrust Litig.*, 2019 WL 1003111 (N.D. Ill. Feb. 28, 2019).  Plaintiffs there alleged that Agri Stats employees had breached the anonymity of competitively sensitive data in meetings with producer defendants, that Agri Stats should have known its reporting structure facilitated collusion, that Agri Stats understood why its clients demanded disaggregated data, and that the granular production

6

information it provided was not what rational firms would normally disclose absent coordination. *Id.* The court held these were plausible allegations that Agri Stats knew its reporting services were facilitating the conspiracy. *Id.*; *accord In re Pork Antitrust Litig.*, 781 F. Supp. 3d 758, 832 (D. Minn. 2025) (denying Agri Stats summary judgment because "a reasonable jury could find that Agri Stats knowingly played a central role in the alleged conspiracy"); *In re Plasma-Derivative Protein Therapies Antitrust Litig.*, 764 F. Supp. 2d 991, 1003 (N.D. Ill. 2011) (allegation that trade association affirmatively helped conceal the conspiracy by making knowing false statements to regulators, thus having knowledge of it). In each of these cases, the court relied on direct evidence, not circumstantial evidence.

But Plaintiffs have not alleged any direct evidence against the Non-School Defendants here. Unlike the cases Plaintiffs cite, their Complaint contains no allegation that any Non-School Defendant knew about the alleged conspiracy. A party cannot enter an agreement that it does not know about, *see Am. Tobacco Co. v. United States*, 328 U.S. 781, 810 (1946) (agreement under the Sherman Act requires a "meeting of minds" between parties), and allegations of actions that allegedly helped the supposed conspiracy, without allegations of knowledge of the conspiracy, are insufficient to allege participation in an agreement.

Moreover, there are no allegations that the Non-School Defendants facilitated the conspiracy actually alleged in the Complaint. *See* Doc No. 222, at 9–10. Plaintiffs do not respond to the argument that neither the application platforms nor COFHE have any role in admissions, financial-aid, or post-Early Decision admission competition, the very conduct at the core of Plaintiffs' alleged conspiracy theory. Nor do they allege that the Non-School Defendants prevent students who apply or are accepted Early Decision from applying Regular Decision to any other school, leaving schools free to consider admission from any student that applies. Their silence on

this point concedes that the application platforms cannot participate in the alleged conspiracy's core conduct.

Plaintiffs' Opposition also ignores a crucial sequencing issue with respect to the application platforms. Their Complaint makes clear that every action attributed to the application platforms occurs *before* any admission decision is made: the alleged conduct involving application platforms consists of displaying school-selected Early Decision terms; passing along Early Decision applications submitted by students to schools; and implementing school-specific instructions regarding whether a student who has already applied Early Decision elsewhere may submit another Early Decision application through a given application platform. *See* Doc No. 1 ¶¶ 80–81, 83, 106–08, 117. But none of this pre-admission activity relates to the alleged post-admission restraint. The alleged conspiracy among School Defendants involves conduct *after* a student has been admitted via Early Decision; namely, whether other schools compete for that admitted student. *See supra* at 4. Plaintiffs allege no facts bridging the temporal gap between pre-admission administrative tasks performed by the application platforms and post-admission decisions made by a subset of schools, and thus have not alleged an act that facilitates the conspiracy alleged.[2] Plaintiffs' theory that the Non-School Defendants "enforce" Early Decision by limiting applicants to one Early Decision submission, Doc. No. 225 at 2, is equally implausible. The Complaint does not allege that this restriction applies only to Defendant Schools. In fact, the same one-Early-Decision-application restriction applies across hundreds of institutions, reflecting a neutral, platform-wide policy rather than any agreement to enforce a few schools' post-admission restraint.

---

[2] Plaintiffs make no allegation whatsoever that COFHE was involved in the application process, whether pre- or post-admission.

### 2.    The Opposition's Treatment of "Plus Factors" Does Not Save the Complaint

Plaintiffs' "plus factors" fare no better.  They argue that the Non-School Defendants had a motive to conspire, but their theories are neither alleged in the Complaint nor economically sensible.  Early Decision reduces application volume, which in turn reduces the application platforms' revenue.  Plaintiffs' speculation that the platforms feared a group boycott if they did not "enforce" Early Decision, Doc No. 225 at 40 n.8, is not tethered to any allegation.  It underscores that the platforms operate as their customers direct, not as conspirators.  Their alternative suggestion that the platforms sought to "deepen[] their institutional relationships" with the schools they serve is probative of nothing, attempting to pin joint and several liability on companies that unilaterally implement their customers' preferences.  Doc. No. 225 at 39.  As to COFHE, Plaintiffs' only allegation is that COFHE is an association that conducts research.  Plaintiffs identify no COFHE meeting, vote, directive, rule, program, agenda, minutes, distribution, or enforcement mechanism concerning Early Decision, nor any allegation that COFHE designed Early Decision forms, transmitted Early Decision admit lists, or coordinated Early Decision policies.

Plaintiffs also fail to explain why following school-selected Early Decision terms would be contrary to the application platforms' self-interest, and they are entirely silent on the matter as to COFHE.  Their footnote stating that allowing only one Early Decision submission serves "no independent commercial purpose" ignores the obvious: the platforms have a commercial interest in adhering to the instructions of the institutions that pay for and use the platforms' services, including the hundreds of schools using Early Decision that are not part of the alleged conspiracy. *See* Doc No. 225, at 41. n.9.

Finally, the Opposition does not identify any allegation that the Non-School Defendants engaged in the type of information sharing that Plaintiffs assert is central to enforcing the alleged

conspiracy.  Plaintiffs cite only a statement that Amherst shared its Early Decision admits lists with "roughly 30 other schools." Doc No. 225 at 42–43.  Plaintiffs speculate that this is a reference to COFHE because COFHE allegedly has around 35 members.  *Id.* at 42, 43 n.11.  But Plaintiffs do not allege that COFHE (or the platforms) participated in or directed Early Decision admit list-sharing.  Equating "roughly 30 schools" with COFHE's membership (or Common App's or Scoir's participation in the alleged agreement) is sheer speculation that cannot substitute for well-pleaded facts under *Twombly*.  Nor do Plaintiffs allege that the Non-School Defendants know the outcome of any of the School Defendants' admissions decisions—a critical omission, because without knowledge of who was admitted Early Decision, the application platforms could not facilitate information sharing or enforce any alleged post-admission restraint. Without such allegations, Plaintiffs cannot plausibly claim that the Non-School Defendants knowingly joined the alleged agreement.

Taken together, Plaintiffs allege only neutral, pre-admission administrative functions common to hundreds of schools nationwide—a far cry from the kind of circumstantial evidence necessary to infer participation in a horizontal agreement under *Twombly*.

## CONCLUSION

Plaintiffs' Opposition does not rehabilitate their Complaint; it confirms its fatal defects. Plaintiffs identify no factual allegation in the Complaint showing that the Common App, Scoir, or COFHE knew of or entered into the alleged horizontal agreement.  They offer neither direct nor circumstantial evidence to establish an agreement involving the Non-School Defendants.  They instead attempt to amend the Complaint through the Opposition and rely on mischaracterizations of the Non-School Defendants' statements.  Under *Twombly*, Plaintiffs' allegations fall well short of plausibility.  The claims against Non-School Defendants must be dismissed with prejudice.

10

Dated:  December 19, 2025

Respectfully submitted,

 /s/ Michael T. Gass
Michael T. Gass (BBO No. 546874)
Samuel N. Rudman (BBO No. 698018)
John C. Calhoun (BBO No. 694479)
Katherine Quezada (BBO No. 711550)
CHOATE, HALL & STEWART LLP
Two International Place
Boston, MA 02110
Telephone:  617-248-5000
mgass@choate.com
srudman@choate.com
jcalhoun@choate.com
kquezada@choate.com

*Counsel for Defendant Consortium On Financing Higher Education*

 /s/ Sarah F. Kirkpatrick
Sarah F. Kirkpatrick (BBO No. 667300)
Cole T. Wintheiser (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
Tel: 202-434-5000
skirkpatrick@wc.com
cwintheiser@wc.com

*Counsel for Defendant Scoir, Inc.*

 /s/ Alexander M. Wolf
Alexander M. Wolf (BBO # 685374)
awolf@steptoe.com
STEPTOE LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
Telephone:   713-221-2300
Facsimile:    713-221-2320

Eric S. Berman (admitted *pro hac vice*)
Lee F. Berger (admitted *pro hac vice*)
Patrick F. Linehan (admitted *pro hac vice*)
Weisiyu Jiang (admitted *pro hac vice*)
1330 Connecticut Avenue, NW
Washington, DC 20036
Telephone: (202) 429-3000
eberman@steptoe.com
lberger@steptoe.com
plinehan@steptoe.com
wjiang@steptoe.com

*Counsel for Defendant The Common Application, Inc.*

**CERTIFICATE OF SERVICE**

I hereby certify that on December 19, 2025, a true and correct copy of Non-School Defendants' Reply in Support of Motion to Dismiss has been served on all counsel of record via the Court's ECF system.

 /s/ Alexander M. Wolf
Alexander M. Wolf

11