**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |
|---|---|
| ALAYNA D'AMICO, MAX MILLER, BELLA ROBINSON, and BRAM SILBERT, representing themselves and all others similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>CONSORTIUM ON FINANCING HIGHER EDUCATION, THE COMMON APPLICATION INC., SCOIR INC., AMHERST COLLEGE, BARNARD COLLEGE, BOWDOIN COLLEGE, BROWN UNIVERSITY, BRYN MAWR COLLEGE, CARLETON COLLEGE, COLUMBIA UNIVERSITY, CORNELL UNIVERSITY, THE TRUSTEES OF DARTMOUTH COLLEGE, DUKE UNIVERSITY, EMORY UNIVERSITY, HAVERFORD COLLEGE, JOHNS HOPKINS UNIVERSITY, MACALESTER COLLEGE, MIDDLEBURY COLLEGE, MOUNT HOLYOKE COLLEGE, NORTHWESTERN UNIVERSITY, OBERLIN COLLEGE, POMONA COLLEGE, WILLIAM MARSH RICE UNIVERSITY, SMITH COLLEGE, SWARTHMORE COLLEGE, TRINITY COLLEGE, UNIVERSITY OF CHICAGO, UNIVERSITY OF PENNSYLVANIA, UNIVERSITY OF ROCHESTER, VANDERBILT UNIVERSITY, VASSAR COLLEGE, WASHINGTON UNIVERSITY IN ST. LOUIS, WELLESLEY COLLEGE, WESLEYAN UNIVERSITY, and WILLIAMS COLLEGE,<br><br>          Defendants. | Case No. 1:25-cv-12221-AK |

**REPLY IN SUPPORT OF DEFENDANTS' JOINT MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................... 1

ARGUMENT............................................................................................................................ 2

I.     Plaintiffs Fail to Plausibly Allege a Horizontal Agreement Among Defendants. ............. 2

        A.    No Direct Evidence................................................................................................ 4

        B.    No Circumstantial Evidence.................................................................................. 5

            1.     No Parallel Conduct.................................................................................. 5

            2.     "Something More" Is Missing................................................................... 6

II.    Plaintiffs Fail to Plausibly Allege an Unreasonable Restraint of Trade. ........................ 10

        A.    The Court Should Resolve the Standard of Review............................................ 10

        B.    The Rule of Reason Applies................................................................................ 10

        C.    Plaintiffs' Rule of Reason Claim Fails. .............................................................. 11

III.   Plaintiffs Lack Antitrust Standing. ................................................................................. 13

IV.   The Statute of Limitations Bars Claims by Plaintiffs D'Amico and Silbert. .................. 15

CONCLUSION...................................................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*1-800 Contacts, Inc. v. FTC,*
   1 F.4th 102 (2d Cir. 2021)................................................................................. 11

*Abdallah v. Bain Capital LLC,*
   752 F.3d 114 (1st Cir. 2014)............................................................................. 15

*Advanced Technology Corp. v. Instron, Inc.,*
   925 F. Supp.2d 170 (D. Mass. 2013).................................................................. 5

*American Sales Co., LLC v AstraZeneca LP (In re Nexium (Esomeprazole)*
   *Antitrust Litigation),*
   842 F.3d 34 (1st Cir. 2016) ......................................................................... 3, 6, 8

*Bell Atlantic Corp. v. Twombly,*
   550 U.S. 544 (2007).................................................................................... 6, 7, 8

*Breiding v. Eversource Energy,*
   344 F. Supp. 3d 433 (D. Mass. 2018)................................................................ 14

*CCBN.com, Inc. v. Thomson Financial, Inc.,*
   270 F. Supp. 2d 146 (D. Mass. 2003)................................................................ 10

*Chalmers v. NCAA,*
   No. 25-1307, 2025 WL 3628416 (2d Cir. Dec. 15, 2025) ................................. 15

*Choh v. Brown University,*
   753 F. Supp. 3d 117 (D. Conn. 2024), *appeal docketed,* No. 24-2826 (2d Cir.
   Oct. 25, 2024)........................................................................................ 11, 12, 15

*Eastern Food Services Inc. v. Pontifical Catholic University Services Ass'n,*
   357 F.3d 1 (1st Cir. 2004) ................................................................................. 13

*Evergreen Partnering Group, Inc. v. Pactiv Corp.,*
   720 F.3d 33 (1st Cir. 2013) .............................................................................. 5, 8

*Gibson v. Cendyn Group, LLC,*
   148 F.4th 1069 (9th Cir. 2025)............................................................................ 3

*Government of Puerto Rico v. Carpenter Co.,*
   442 F. Supp. 3d 464 (D.P.R. 2020)................................................................... 15

*Hansen v. Northwestern University,*
   2025 WL 2731378 (N.D. Ill. Sept. 24, 2025)................................................... 2, 6

*In re Insurance Brokerage Antitrust Litigation*,
618 F.3d 300 (3d Cir. 2010) .................................................................................. 5

*Interstate Circuit v. United States*,
306 U.S. 208 (1939) ............................................................................................... 4

*Kamakahi v. American Society for Reproductive Medicine*,
2013 WL 1768706 (N.D. Cal. Mar. 29, 2013) ..................................................... 10

*Lumber Liquidators, Inc. v. Cabinets To Go, LLC*,
415 F. Supp. 3d 703 (E.D. Va. 2019) .................................................................. 10

*Menasha Corp. v. News America Marketing In-Store, Inc.*,
354 F.3d 661 (7th Cir. 2004) ............................................................................... 12

*Morales-Villalobos v. Garcia-Llorens*,
316 F.3d 51 (1st Cir. 2003) ................................................................................. 13

*Mosaic Health, Inc. v. Sanofi-Aventis United State, LLC*,
156 F.4th 68 (2d Cir. 2025) ................................................................................... 6

*NCAA v. Alston*,
594 U.S. 69 (2021) ............................................................................................... 11

*In re North Sea Brent Crude Oil Futures Litigation*,
256 F. Supp. 3d 298 (S.D.N.Y. 2017), *aff'd sub nom. Prime International Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019) ....................................... 14

*Queen City Pizza, Inc. v. Domino's Pizza, Inc.*,
124 F.3d 430 (3d Cir. 1997) ............................................................................... 13

*Ramsey v. National Association of Music Merchants, Inc. (In re Musical Instruments & Equip. Antitrust Litig.)*,
798 F.3d 1186 (9th Cir. 2015) ......................................................................... 5, 6, 7

*SD3, LLC v. Black & Decker (U.S.) Inc.*,
801 F.3d 412 (4th Cir. 2015). Case ....................................................................... 9

*Sullivan v. Tagliabue*,
25 F.3d 43 (1st Cir. 1994) ................................................................................... 14

*Untracht v. Fikri*,
454 F. Supp. 2d 289 (W.D. Pa. 2006), *aff'd*, 249 F. App'x 268 (3d Cir. 2007)............. 14, 15

*Vazquez-Ramos v. Triple-S Salud, Inc.*,
55 F.4th 286 (1st Cir. 2022) ............................................................................... 13

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* § 1415, Lexis (last updated: Sept. 2025) ................................................................................................................ 6

Complaint*, United States v. NACAC*, No. 1:19-cv-03706 (D.D.C. Dec. 12, 2019), ECF No. 1 ............................................................................................................................... 3

**INTRODUCTION**

Plaintiffs' opposition attempts to fill the gaps in their implausible antitrust allegations by advancing a sweeping conspiracy theory. Defendants' motion explained the implausibility of the alleged agreement not to compete for students admitted Early Decision. Plaintiffs respond by asserting that the entirety of Early Decision is unlawful. According to Plaintiffs, a decades-old, voluntary admissions option offered by hundreds of schools and chosen by many thousands of students each year is, for the 32 Defendant Schools and no others, the product of a conspiracy designed to raise tuition and reduce financial aid. No factual allegations support that far-fetched theory and dismissal is warranted for multiple independent reasons.

**No Horizontal Agreement.** Plaintiffs do not plausibly allege an agreement among Defendant Schools to use Early Decision to eliminate competition. Plaintiffs acknowledge that Early Decision involves a *vertical* agreement between student and school used by hundreds of institutions nationwide. And they admit that their case requires plausible allegations of a *horizontal* agreement among the Defendant Schools. But they have no such allegations. Plaintiffs' purported direct evidence consists of a single statement made by only the eight Ivy League schools—some of whom do not even offer Early Decision and are not Defendants—and no such allegations against the 27 non-Ivy League Defendant Schools. Plaintiffs' request that the Court draw numerous inferences from this statement confirms it is not direct evidence of the alleged "Early Decision conspiracy."

Plaintiffs' indirect evidence argument fails too. Plaintiffs do not allege when the supposed conspiracy formed so they are left to rely on a decades-old student note and statements by schools that do not offer Early Decision. More fundamentally, their argument defies common sense. Early Decision is pervasive because of the benefits it offers schools and applicants—benefits Plaintiffs concede in their opposition and Complaint. *See, e.g.*, Doc. No. 1, Compl. ¶¶ 126-128. So it is no

1

great shock—and certainly no conspiracy—that the 32 Defendant Schools, like many others, offer Early Decision as an option for students who choose to pursue it.

**No Unreasonable Restraint.** Plaintiffs do not plead a *per se* antitrust violation; indeed, they admit the procompetitive benefits derived from Early Decision. The rule of reason, therefore, governs, but Plaintiffs fail to plead a rule of reason claim. They do not plausibly define an antitrust market or plead market power.

**No Antitrust Standing.** Plaintiffs claim that Early Decision reduces financial aid, but do not allege that any Plaintiff would have received more financial aid but for Early Decision. Plaintiffs insist the alleged agreement raises tuition for all students at every school in all circumstances, but the only factual allegation offered for this theory—a chart showing the cost of college attendance since the 1990s—undermines it.

**The Statute of Limitations Applies.** Plaintiffs do not dispute that the alleged injuries to Silbert and D'Amico occurred outside the four-year limitations period. Because the continuing violations doctrine does not apply, their claims should be dismissed as time barred.

For all these reasons, the alleged "Early Decision conspiracy" is implausible. Indeed, a district court recently dismissed a similar case for that very reason. *Hansen v. Northwestern Univ.*, 2025 WL 2731378, at *9-10 (N.D. Ill. Sept. 24, 2025). Plaintiffs tellingly do not engage with the *Hansen* decision to dismiss similarly insufficient allegations on grounds now raised by Defendants. The Court should dismiss the Complaint with prejudice.

## ARGUMENT

### I.    Plaintiffs Fail to Plausibly Allege a Horizontal Agreement Among Defendants.

Plaintiffs' claim requires a plausible agreement among Defendant Schools, but they fail to plead one. Plaintiffs argue that Early Decision reflects a "horizontal customer-allocation conspiracy" or a "horizontal market-allocation agreement." Doc. No. 225, Opp. to Mot. to Dismiss

2

at 32, 49. But Early Decision itself involves only a *vertical* agreement—the school offers students the option to apply and potentially receive admission to their top choice school early in the application process; in return, the school receives students' commitment to attend if they are admitted and receive financial aid that makes attendance feasible. *See* Doc. No. 1 ¶¶ 2, 12, 79, 81, 90. Early Decision is *voluntary*—students decide whether to apply Early Decision and, if so, where. *Id.* ¶ 137. That the Application platforms have their own vertical agreements with each school to implement *that school's* Early Decision requirements involves no horizontal agreement among Defendant Schools. *See Am. Sales Co., LLC v AstraZeneca LP (In re Nexium (Esomeprazole) Antitrust Litig.)*, 842 F.3d 34, 56 (1st Cir. 2016) (separate vertical agreements between one defendant and each other defendant do not plead a single horizontal conspiracy); *Gibson v. Cendyn Grp., LLC*, 148 F.4th 1069, 1082-88 (9th Cir. 2025) (competitors' separate vendor agreements with common defendant did not restrain trade).[1]

What Plaintiffs need—but lack—are factual allegations to support a separate *horizontal* conspiracy among Defendant Schools to offer Early Decision and respect Early Decision commitments. *See* Doc. No. 225 at 31-32 (acknowledging their attempt to plead "horizontal agreement among rival schools"). That means Plaintiffs need plausible allegations that the 32 Defendant Schools colluded to offer Early Decision even though (a) many schools not named as defendants also use Early Decision and (b) adopting Early Decision produces undisputed benefits without a horizontal agreement. The Complaint does not allege direct or circumstantial evidence of any horizontal conspiracy among Defendant Schools.

---

[1] Plaintiffs cite the Department of Justice's complaint against the National Association for College Admission Counseling (NACAC) over a distinct and now-abandoned practice limiting schools from offering incentives to students admitted Early Decision. DOJ never suggested Early Decision is a horizontal customer allocation; it accepted Early Decision as a desirable way to expand student choice. *See* Compl. ¶¶ 22, 24, *United States v. NACAC,* No. 1:19-cv-03706 (D.D.C. Dec. 12, 2019), ECF No. 1.

### A.      No Direct Evidence.

Plaintiffs' opposition confirms the Complaint fails to plead direct evidence of any Early Decision conspiracy. Plaintiffs acknowledge that direct evidence is "extremely rare" and that it must "show [a conspiracy] exists without any inferences." *Id.* at 29, 30 (quotation marks omitted). Yet their direct-evidence argument depends on a series of implausible inferences. They rely solely on an allegation that the Ivy League schools agreed to "honor any required commitment to matriculate that has been made to another [Ivy League] college under [Early Decision]." Doc. No. 1 ¶ 116. This does not plausibly, let alone directly, plead an "Early Decision conspiracy." To start, only five Defendants are in the Ivy League so the statement does not apply to the other 27 Defendant Schools. The statement therefore does not—without unsupported speculation—provide evidence of any agreement among *all* 32 Defendant Schools. Nor is this statement evidence that even Ivy League Defendants agreed to offer Early Decision; at most, it suggests that a few schools will not facilitate breaches of applicants' commitments to other Ivy League schools. Indeed, the Complaint acknowledges that some Ivy League schools do not have (and thus could not have agreed to adopt) Early Decision. *Id.* ¶¶ 115-17. In the end, by asking the Court to draw "inferences" of conspiracy, Plaintiffs concede they do not plead *direct* evidence, which is evidence "without any inferences." Doc. No. 225 at 30 (Ivy League statement "supports the inference that the remaining defendants adhered to it"); *id.* at 31 (arguing in favor of "inference" from statement).

Plaintiffs also rely on the Supreme Court's decision in *Interstate Circuit v. United States*, 306 U.S. 208 (1939). Doc. No. 225 at 30. But *Interstate Circuit* is not a direct-evidence case. And it illustrates what is missing here. There, a horizontal agreement was the only conceivable explanation for "far-reaching changes in [defendants'] business methods." 306 U.S. at 221-23. The "[k]ey to Interstate Circuit's conspiracy finding was … that each distributor's decision to accede to [the theater's] demands would have been economically self-defeating unless the other

4

distributors did the same." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 331 (3d Cir. 2010). Not so here because schools have economic incentives to adopt similar policies unilaterally. *See infra* Section II.B. That is why hundreds of schools outside the alleged conspiracy also offer Early Decision.

### B.    No Circumstantial Evidence.

Plaintiffs do not allege parallel conduct or anything more suggesting conspiracy. At bottom, common sense undermines their attempt to plead an inference of an Early Decision conspiracy based on widespread admissions practices.

### 1.    No Parallel Conduct.

Plaintiffs' parallel conduct argument boils down to two assertions: all Defendant Schools (a) offer Early Decision and (b) decline to consider students who have been admitted Early Decision elsewhere. Doc. No. 225 at 32-33. But the Complaint acknowledges that this alleged conduct is widespread well beyond these Defendant Schools—hundreds of other institutions offer Early Decision and have chosen to focus their limited resources on students not already committed to different schools. *Id.* at 34. In light of Early Decision's ubiquity, Plaintiffs must identify *when* Defendant Schools adopted the challenged policies. But they do not allege anything as to the timing of Defendant Schools' supposed decisions to offer Early Decision or decline to consider students admitted Early Decision elsewhere. Indeed, the First Circuit requires allegations of "the general contours of when an agreement was made," *Evergreen Partnering Grp., Inc. v. Pactiv Corp.*, 720 F.3d 33, 46 (1st Cir. 2013). This pleading failure is fatal. *Ramsey v. Nat'l Ass'n of Music Merchs., Inc. (In re Musical Instruments & Equip. Antitrust Litig.)*, 798 F.3d 1186, 1193, 1195-96 (9th Cir. 2015); *see also Advanced Tech. Corp. v. Instron, Inc.*, 925 F. Supp.2d 170, 178 (D. Mass. 2013).

Instead of addressing this deficiency, Plaintiffs respond with a strawman argument—that "there cannot be parallel conduct because Plaintiffs have not identified the precise moment each

5

defendant joined the agreement." Doc. No. 225 at 33. Though Plaintiffs need not allege "the precise moment" the conspiracy was hatched or joined, they must allege more than that these schools eventually—over decades—adopted policies similar to each other and to hundreds of other schools. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). If Plaintiffs' view were the law, antitrust plaintiffs could establish parallel conduct merely by, for example, alleging that a group of retailers all offer Black Friday sales or by noting that all colleges offer Regular Decision. Common sense confirms that without plausible allegations of parallel timing, common activities are not indicative of a conspiracy. This case looks nothing like the parallel conduct in the cases that Plaintiffs cite. *See, e.g.*, *Mosaic Health, Inc. v. Sanofi-Aventis U.S., LLC*, 156 F.4th 68, 82 (2d Cir. 2025) (finding parallel conduct where "policy changes" were "similar in timing"). [2]

In sum, Plaintiffs have not pleaded parallel conduct because they have *no* allegations of when any Defendant joined the alleged conspiracy. The *Hansen* decision dismissed similar claims for this reason. Doc. No. 220, Mot. to Dismiss at 16; *accord Hansen*, 2025 WL 2731378, at *9. This Court should do the same. Plaintiffs' silence on *Hansen* is telling.

### 2.    "Something More" Is Missing.

Plaintiffs have not pleaded the "something more" to infer an Early Decision conspiracy. The key consideration is whether the conduct alleged would be against the defendants' self-interest if undertaken unilaterally. *See, e.g.*, *Nexium*, 842 F.3d at 57; *Twombly*, 550 U.S. at 568; P. Areeda & H. Hovenkamp, *Antitrust Law* § 1415, Lexis (last updated Sept. 2025) ("conspiracy may not be

---

[2] Plaintiffs argue *Musical Instruments*' statement that parallel conduct includes "competitors adopting similar policies *around the same time*" was merely illustrative. 798 F.3d at 1193 (emphasis added). But the Ninth Circuit would not have framed the example in this way if parallel conduct *only* requires "competitors adopting similar policies." Doc. No. 225 at 34. And in applying this well-established rule to the facts, *Musical Instruments* makes clear that timing can be important by rejecting plaintiffs' conspiracy because defendants adopted the policies over a period of several years, not simultaneously. "Allegations of such slow adoption of similar policies does not raise the specter of collusion." 798 F.3d at 1195-96.

inferred from parallel action unless that action would be contrary to an alleged conspirator's self-interest" absent conspiracy). This rule makes sense because independent reasons to undertake the alleged conduct suggest that a conspiracy does not exist. *See Twombly*, 550 U.S. at 568.

Plaintiffs' allegations explain why schools unilaterally offer Early Decision. For example, schools allegedly offer Early Decision out of "fear of being put at a competitive disadvantage" and "los[ing] out on applications from desirable students who wish to use Early Decision at a competing school." Doc. No. 1 ¶ 12. Plaintiffs also argue that "Early Decision isolates 'price-insensitive' students," allowing schools to collect more tuition. Doc. No. 225 at 54. These alleged benefits would exist irrespective of any conspiracy. Plaintiffs also explain why schools would unilaterally decline to facilitate a breach of Early Decision commitments, including to avoid undermining the integrity of the admissions process and opening themselves to charges of hypocrisy—a rationale confirmed by non-Early Decision schools, such as MIT, doing the same. Doc. No. 220 at 17-18; Doc. No. 1 ¶¶ 115, 117.

These benefits explain why Early Decision is so widespread. That so many other institutions have the same policies confirms those policies are the product of unilateral decision-making—not concerted action. In response, Plaintiffs claim that Defendant Schools inhabit a separate (undefined) "top-tier admissions market." Doc. No. 225 at 34. That is a red herring. Not only is Plaintiffs' market definition facially deficient, *see infra* Section II.C., but this argument mixes and matches antitrust concepts. Market definition addresses the reasonableness or unreasonableness of the alleged restraint—not the plausibility or implausibility of the alleged conspiracy. Most importantly, conduct that does not differentiate Defendant Schools from hundreds of other institutions does not suggest a conspiracy joined by Defendants but not the others. *Twombly*, 550 U.S. at 556; *In re Musical Instruments*, 798 F.3d at 1195-96.

Plaintiffs suggest that other schools offering Early Decision operate in less competitive college admissions environments and thus would have greater reason to offer Early Decision unilaterally. According to Plaintiffs, those schools' decisions are not instructive as to Defendant Schools' decisions. *See* Doc. No. 225 at 3-4. But Plaintiffs' alleged competitive dynamics suggest the opposite—that schools in less competitive college admissions environments would be *more* likely to reach an agreement than Defendant Schools at which "demand" for admission "far exceeds supply" and competition for admission "is not meaningfully constrained by broader market competition." *Id.* at 3, 5. Those dynamics, as alleged by Plaintiffs, show that Defendant Schools—more so than less selective schools—benefit from offering Early Decision unilaterally in the form of a stronger applicant pool without losing desirable applicants. Plaintiffs' attempt to isolate Defendant Schools in a separate market with distinct competitive dynamics thus backfires.

Plaintiffs insist that they need not plead plus factors or actions against unilateral self-interest under *Twombly* and *Evergreen. Id.* at 37. *Evergreen* does express wariness about requiring *all* antitrust plaintiffs to plead "plus factors," but in assessing the viability of circumstantial evidence, the court recognized that the alleged conduct was "difficult to explain outside the context of a conspiracy." 720 F.3d at 47-48. And *Twombly* makes clear that where "the complaint itself gives" a "natural explanation for the noncompetition alleged"—such as defendants acting independently in "their best interests"—dismissal is required. 550 U.S. at 568, 569. *Nexium* confirms as much in granting judgment as a matter of law due to the plaintiff's failure to establish an agreement because "self-interest could explain equally well" the parallel conduct alleged. 842 F.3d at 56. Plaintiffs ignore *Nexium*'s holding.

None of Plaintiffs' grab-bag of additional allegations overcomes the common-sense problems with their claimed conspiracy. Plaintiffs argue Defendants had a "motive to conspire"

8

(Doc. No. 225 at 38-39)—i.e., to raise tuition and reduce financial aid—but even those reasons support adopting Early Decision unilaterally. That is particularly so given the economics as Plaintiffs allege them, whereby Defendant Schools have more demand for seats than they can accommodate and Early Decision allows schools to "isolate[] 'price-insensitive' students." *Id.* at 54. If anything, a desire to "command … full-pay" from students (*id.* at 5) *disincentivizes* a Defendant School from encouraging other Defendant Schools to also offer Early Decision because that would create more upfront competition for those same students.

Plaintiffs also invoke vague and stale information-sharing allegations, many of which do not actually appear in the Complaint. *Id.* at 41-43. Plaintiffs cite to a third-hand account of a nearly decade-old statement by an Amherst admissions director regarding the sharing of admitted student lists among 30 unidentified schools. *Id.* Plaintiffs then speculate that these schools were COFHE members because this number matched the number of COFHE members. *Id.* at 42-43. Plaintiffs' Complaint, however, contradicts their speculation because materials incorporated by reference show that COFHE had 35 members at the time of the Amherst admissions director's statement. *Id.* at 43 n.11; *see also* Doc. No. 1 ¶¶ 118-119. And Plaintiffs' generalized allegations on information sharing do nothing to support the inference that Defendant Schools entered into a conspiracy. As Plaintiffs' case law confirms, they cannot "assemble some collection of defendants and then make vague, non-specific allegations against all of them as a group." *SD3, LLC v. Black & Decker (U.S.) Inc.*, 801 F.3d 412, 422 (4th Cir. 2015). Case in point: Plaintiffs rely on several alleged statements by non-defendants; they cannot "lump" broad assertions across so many institutions without specific, defendant-by-defendant allegations. *Id.*

Finally, Plaintiffs rely heavily (and repeatedly) on a decades-old student note that criticizes Early Decision on antitrust and policy grounds. Doc. No. 225 at 1, 9, 11, 14. But Plaintiffs refuse

9

to acknowledge that the paper they cite was a *student* note written back in 2006 by someone without first-hand knowledge of admissions practices. That Plaintiffs rely so heavily on a decades-old student note only exposes their failure to provide actual allegations of a horizontal agreement.

## II.    Plaintiffs Fail to Plausibly Allege an Unreasonable Restraint of Trade.

Plaintiffs' claim should also be dismissed because they do not plead that any restraint unreasonably harms competition under either the *per se* rule or the rule of reason.

### A.    The Court Should Resolve the Standard of Review.

Plaintiffs contend that the Court should delay deciding what standard governs their antitrust claim. They argue that there is no clear divide among the *per se*, quick look, and rule of reason standards, and so the Court simply need not decide which one applies. Doc. No. 225 at 45-48. False. *Stop & Shop Supermarket Co. v. Blue Cross & Blue Shield of Rhode Island* is clear: "[w]hether a plaintiff's alleged facts comprise a *per se* claim is normally a question of legal characterization that can often be resolved by the judge on a motion to dismiss." 373 F.3d 57, 61 (1st Cir. 2004). Plaintiffs' cases do not say otherwise.[3]

### B.    The Rule of Reason Applies.

Plaintiffs use labels for categories of restraints that have sometimes been condemned on a *per se* basis—calling Early Decision a "horizontal customer-allocation conspiracy." Doc. No. 225 at 49. But they cannot manufacture *per se* treatment through conclusory labels; the *substance* of Plaintiffs' allegations controls. *See, e.g.*, *CCBN.com, Inc. v. Thomson Fin., Inc.*, 270 F. Supp. 2d 146, 154-55 (D. Mass. 2003).

---

[3] *See, e.g.*, *Kamakahi v. Am. Soc'y for Reproductive Med.*, 2013 WL 1768706, at *8-12 (N.D. Cal. Mar. 29, 2013) (declining to decide which standard applies because plaintiff adequately pleaded both *per se* and rule of reason claims); *Lumber Liquidators, Inc. v. Cabinets To Go, LLC*, 415 F. Supp. 3d 703, 713-14 (E.D. Va. 2019) (declining to decide standard for *affirmative defense* that contradicted complaint's allegations).

*First*, a "market allocation" label does not fit. Again, Early Decision involves a vertical agreement—not a horizontal one. *Supra* Section I. And Early Decision is not a horizontal customer allocation by *schools* because it is *students* who decide whether to apply Early Decision and, if so, where. Doc. No. 1 ¶ 137. *Students* freely make that choice knowing that Early Decision entails a commitment to attend that institution if admitted and offered financial aid that makes attendance feasible. The alleged "conspiracy" thus looks nothing like a customer-allocation scheme, where rival suppliers divvy up customers.[4]

*Second*, the Complaint and opposition underscore that Early Decision has procompetitive benefits, which necessitate rule of reason analysis. Students benefit from the possibility of early resolution of their application, as well as (per Plaintiffs) a greater chance of admission to their selected school. Doc. No. 1 ¶¶ 3, 84, 137, 144. Plaintiffs further allege that Early Decision benefits schools by allowing them to fill their classes early in the admissions cycle with desirable applicants who will enroll. Doc. No. 225 at 54 (citing Doc. No. 1 ¶¶ 126-128). The prospect of these procompetitive benefits requires the rule of reason. That these benefits arise in the educational context and involve non-profit institutions reinforces that conclusion. Doc. No. 220 at 22.

### C.    Plaintiffs' Rule of Reason Claim Fails.

Plaintiffs do not allege direct or indirect evidence of anticompetitive effects from the challenged restraint itself—Early Decision.

<u>Direct Evidence</u>. Plaintiffs must allege direct evidence of marketwide anticompetitive harm—i.e., higher prices or reduced output in a relevant market. *1-800 Contacts, Inc. v. FTC*, 1 F.4th 102, 118 (2d Cir. 2021); *accord Choh v. Brown Univ.*, 753 F. Supp. 3d 117, 131 (D. Conn. 2024), *appeal docketed*, No. 24-2826 (2d Cir. Oct. 25, 2024). While they make conclusory

---

[4] Plaintiffs cite no case involving similar conduct. Courts do not apply the *per se* rule unless they have "amassed 'considerable experience'" with the restraint at issue. *NCAA v. Alston*, 594 U.S. 69, 89 (2021).

assertions about higher tuition or reduced financial aid, their only factual allegation is a chart of tuition for *all* schools—not just those in the alleged relevant market. Doc. No. 1 ¶ 129; *infra* Section III. But direct evidence *requires* that the restraint increased prices or reduced output in the relevant market. *Choh*, 753 F. Supp. 3d at 131. Plaintiffs respond that "before-and-after allegations are not required," and correlation is enough. Doc. No. 225 at 53-54. But they plead *no* correlation either—their chart does not align with their claimed harms. *See infra* Section III. Plaintiffs' assertion that Early Decision harms consumer choice gets things backward. *Defendants* offer Early Decision as an *additional choice* for applicants; *Plaintiffs*—who had the benefit of that choice themselves—now aim to limit it for others. That is especially pernicious since competition for contract exclusivity enhances competition. *See, e.g.*, *Menasha Corp. v. News Am. Mktg. In-Store, Inc.*, 354 F.3d 661, 663 (7th Cir. 2004) ("competition for the [exclusive] contract is a vital form of rivalry, and often the most powerful one").

Indirect Evidence. Plaintiffs' indirect theory also fails because they do not allege a plausible relevant market or market power in such a market. Plaintiffs insist their market definition is sufficient because it purportedly tracks COFHE's membership and certain national rankings. Doc. No. 225 at 55-56. But nothing in COFHE's membership or mandate suggests it defines the universe of effective competition, and Plaintiffs allege no factual support for the notion that COFHE schools compete primarily with each other such that other public and private institutions are not reasonable substitutes. Such allegations are necessary to define a plausible market. *See* Doc. No. 220 at 26-28. Plaintiffs' reference to national rankings ignores that their gerrymandered market does not map onto any U.S. News & World Report ranking. To the contrary, those rankings include public universities and other schools that Plaintiffs wish to *exclude* and exclude small colleges they would *include*. *Id.* at 26-27. The boundaries of Plaintiffs' alleged market are also

12

unclear, leaving the parties and the Court guessing as to who is in or out. *See* Doc. No. 1 ¶ 151 (asserting relevant market for "undergraduate education from selective private national universities and liberal arts colleges"). All this dooms Plaintiffs' market definition. *See* Doc. No. 220 at 26; *Queen City Pizza, Inc. v. Domino's Pizza, Inc.*, 124 F.3d 430, 436 (3d Cir. 1997) (dismissal appropriate where complaint fails to "define its proposed relevant market with reference to the rule of reasonable interchangeability and cross-elasticity of demand").

Regardless, Plaintiffs have also not pleaded market power, which cannot be shown indirectly without allegations of "market share." *E. Food Servs., Inc. v. Pontifical Cath. Univ. Servs. Ass'n.*, 357 F.3d 1, 6 (1st Cir. 2004). Plaintiffs have no such allegations. They insist market share allegations are not required, citing *Vazquez-Ramos v. Triple-S Salud, Inc.*, 55 F.4th 286 (1st Cir. 2022), but as they acknowledge, that court determined there was a fact dispute over market definition—and under one plausible definition, market share was near "100%." *Id.* at 297; *see Morales-Villalobos v. Garcia-Llorens*, 316 F.3d 51, 55 (1st Cir. 2003) (similar). Plaintiffs offer no shares or proxy for Defendant Schools' alleged market dominance even under their preferred market definition. Conclusory allegations about the ability of Defendant Schools to increase price do not suffice.

## III.   Plaintiffs Lack Antitrust Standing.

Plaintiffs do not address their flawed antitrust standing allegations. Instead, Plaintiffs exacerbate the most glaring problem with their standing theory—that it traces injury to the decision to offer Early Decision—by broadening their antitrust challenge to reach every aspect of Early Decision. *See, e.g.*, Doc. No. 225 at 3, 36. But as explained, this sweeping theory fails for lack of any conceivable agreement. Even moving past this obstacle, Plaintiffs' two high-level theories of injury—reduced financial aid and increased top-line tuition—fail for other reasons.

Financial Aid. Plaintiffs do not address the deficiencies in their reduction-in-financial-aid theory of injury. None of the named Plaintiffs allege that Early Decision decreased their individual financial aid. Doc. No. 220 at 32-33. Miller applied Regular Decision and D'Amico, Miller, and Silbert do not allege they applied for or were eligible for financial aid. *Id.* Robinson does not allege they would have received more aid. *Id.* The failure to allege any direct harm "but for" the alleged conspiracy is fatal. *See Sullivan v. Tagliabue*, 25 F.3d 43, 52 (1st Cir. 1994); *see also Breiding v. Eversource Energy*, 344 F. Supp. 3d 433, 455 (D. Mass. 2018) (no antitrust standing where "the chain of causation between [plaintiffs'] injury and the alleged restraint ... contains several somewhat vaguely defined links"). Plaintiffs have no response and thus concede the issue.

Top-Line Tuition. Plaintiffs' other theory—that Early Decision raised overall tuition at all Defendant Schools—is also deficient. To advance this theory, the Complaint offers only a chart purporting to show "that tuition has risen substantially faster than Defendants' institutional costs." Doc. No. 225 at 61. But Defendants explained that this chart *undermines* Plaintiffs' theory because it does not show any appreciable impact from the purported adoption of Early Decision "in the early 1990s." Doc. No. 220 at 31. The blue line (Tuition Inflation) begins to separate from the green line (Inflation) and orange line (Costs) *before* 1990, with a steady rise until 2002, when there began another relative increase in the blue line (Tuition Inflation) that Plaintiffs do not allege has anything to do with Early Decision. Doc. No. 1 ¶ 129. It thus does not support even *correlation*. Doc. No. 220 at 32. Again, Plaintiffs have no response, thereby conceding the issue.[5]

Plaintiffs also failed to address the common-sense rule that "voluntary foreclosure of one's own opportunities for competition is not the type of antitrust injury for which the antitrust laws

---

[5] Plaintiffs' insistence (Doc. No. 225 at 54) that correlation is enough is also wrong. *In re North Sea Brent Crude Oil Futures Litig.*, 256 F. Supp. 3d 298, 313-314 (S.D.N.Y. 2017) (dismissing because "[c]orrelation is not the same as causation"), *aff'd sub nom. Prime Int'l Trading, Ltd. v. BP P.L.C.*, 937 F.3d 94 (2d Cir. 2019); *Breiding*, 344 F. Supp. 3d at 459 (similar).

were designed to provide redress." *Untracht v. Fikri*, 454 F. Supp. 2d 289, 310 (W.D. Pa. 2006), *aff'd*, 249 F. App'x 268 (3d Cir. 2007). Instead, Plaintiffs misconstrue Defendants' argument. Doc. No. 225 at 63. Plaintiffs seek recompense for an alleged injury—higher net prices due to the loss of bargaining leverage—that supposedly resulted from their own informed choice to apply Early Decision. Plaintiffs cite no decision finding antitrust injury on even remotely similar facts.

## IV.    The Statute of Limitations Bars Claims by Plaintiffs D'Amico and Silbert.

Plaintiffs do not dispute that D'Amico and Silbert first suffered their alleged injury more than four years before filing suit. Doc. No. 225 at 64. Instead, they assert that the continuing violations doctrine saves their stale claims and that dismissal on statute of limitations grounds is inappropriate. *Id* at 64-65. This is incorrect. The continuing violations doctrine requires an overt act that is "new and independent … not merely a reaffirmation of a previous act," inflicting a "new and accumulating injury." *Gov't of P.R. v. Carpenter Co.*, 442 F. Supp. 3d 464, 475 (D.P.R. 2020). They do not plead any "new" overt act. *See Choh*, 753 F. Supp. 3d at 136; *see also Chalmers v. NCAA*, No. 25-1307, 2025 WL 3628416, at *3-4 (2d Cir. Dec. 15, 2025). "When the allegations in a complaint show that the passage of time between the events giving rise to the claim and the commencement of the action exceeds the applicable limitations period," dismissal is required. *Abdallah v. Bain Cap. LLC*, 752 F.3d 114, 119 (1st Cir. 2014); *see also Carpenter Co.*, 442 F. Supp. 3d at 475. Thus, D'Amico's and Silbert's untimely claims should be dismissed.

## CONCLUSION

The Court should dismiss the Complaint with prejudice.

15

Dated: December 19, 2025

Respectfully submitted,

*/s/  Douglas E. Litvack*
Douglas E. Litvack (admitted *pro hac vice*)
Ishan K. Bhabha (admitted *pro hac vice*)
Peter E. Davis (admitted *pro hac vice*)
JENNER & BLOCK LLP
1099 New York Avenue, NW, Suite 900
Washington, DC 20001-4412
(202) 639-6300
dlitvack@jenner.com
ibhabha@jenner.com
pdavis@jenner.com

Shoba Pillay (MA Bar No. 659739)
Casey Carlson (admitted *pro hac vice*)
JENNER & BLOCK LLP
353 N. Clark Street
Chicago, IL 60654-3456
(312) 222-9350
spillay@jenner.com
ccarlson@jenner.com

*Counsel for Defendants The Trustees of Dartmouth
College and William Marsh Rice University*

*/s/  Michael T. Gass*
Michael T. Gass (BBO No. 546874)
Samuel N. Rudman (BBO No. 698018)
John C. Calhoun (BBO No. 694479)
Katherine Quezada (BBO No. 711550)
CHOATE, HALL & STEWART LLP
Two International Place
100-150 Oliver Street
Boston, MA 02110
(617) 248-5000
mgass@choate.com
srudman@choate.com
jcalhoun@choate.com
kquezada@choate.com

*Counsel for Defendant Consortium On
Financing Higher Education*

16

/s/  Alexander M. Wolf
Alexander M. Wolf (BBO # 685374)
awolf@steptoe.com
STEPTOE LLP
717 Texas Avenue, Suite 2800
Houston, Texas 77002
(713) 221-2300

Eric S. Berman (admitted *pro hac vice*)
Lee F. Berger (admitted *pro hac vice*)
Patrick F. Linehan (admitted *pro hac vice*)
Weisiyu Jiang (admitted *pro hac vice*)
STEPTOE LLP
1330 Connecticut Avenue, NW
Washington, DC 20036
(202) 429-3000
eberman@steptoe.com
lberger@steptoe.com
plinehan@steptoe.com
wjiang@steptoe.com

*Counsel for Defendant The Common
Application, Inc.*

/s/ Sarah F. Kirkpatrick
Sarah F. Kirkpatrick (BBO No. 667300)
Cole T. Wintheiser (*pro hac vice*)
WILLIAMS & CONNOLLY LLP
680 Maine Ave. SW
Washington, DC 20024
(202) 434-5000
skirkpatrick@wc.com
cwintheiser@wc.com

*Counsel for Defendant Scoir, Inc.*

/s/ Juan A. Arteaga
Juan A. Arteaga (*pro hac vice*)
Rosa M. Morales (*pro hac vice*)
CROWELL & MORING LLP
Two Manhattan West
375 Ninth Avenue
New York, NY 10001
(212) 223-4000
JArteaga@crowell.com
RMorales@crowell.com

17

Jordan Ludwig (*pro hac vice*)
CROWELL & MORING LLP
515 South Flower Street
Los Angeles, CA  90071
(213) 622-4750
JLudwig@crowell.com

Daniel H. Leff (BBO #689302)
CROWELL & MORING LLP
1 International Place
Boston, MA  02110
(781) 795-4700
DLeff@crowell.com

*Counsel for Defendants Amherst College, Bowdoin College, Wellesley College, and Williams College*

/s/  Jacob R. Sorensen
Jacob R. Sorensen (*pro hac vice*)
Laura C. Hurtado (*pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
Four Embarcadero Center, 22nd Floor
San Francisco, CA 94111
(415) 983-1000
jake.sorensen@pillsburylaw.com
laura.hurtado@pillsburylaw.com

Jeffrey Metzler (*pro hac vice*)
PILLSBURY WINTHROP SHAW PITTMAN LLP
31 West 52nd Street
New York, NY 10019
(212) 858-1153
jeffrey.metzler@pillsburylaw.com

*Counsel for Defendants Barnard College, Oberlin College, Pomona College, Trinity College, and Vassar College*

18

/s/ Noah J. Kaufman
Noah J. Kaufman
Fiona Fitzgerald (*application for admission forthcoming*)
MORGAN, LEWIS & BOCKIUS LLP
One Federal Street
Boston, MA 02110
(617) 341-7590
noah.kaufman@morganlewis.com
fiona.fitzgerald@morganlewis.com

*Counsel for Defendant Brown University*

/s/ Daryl J. Lapp
Daryl J. Lapp (BBO #554980)
TROUTMAN PEPPER LOCKE LLP
111 Huntington Avenue, 9th Floor
Boston, MA 02199-7613
(617) 239-0100
daryl.lapp@troutman.com

Daniel Boland (*pro hac vice*)
Barbara Sicalides (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
3000 Two Logan Square
Eighteenth and Arch Streets
Philadelphia, PA 19103
(215) 981-4000
daniel.boland@troutman.com
barbara.sicalides@troutman.com

Julie Webb (*pro hac vice*)
TROUTMAN PEPPER LOCKE LLP
111 South Wacker Drive
Suite 4100
Chicago, IL 60606
(312) 443-0700
julie.webb@troutman.com

*Counsel for Defendants Bryn Mawr College and Swarthmore College*

19

/s/  Jacob A. Kramer
Lawrence G. Scarborough (BBO No. 681285)
FAEGRE DRINKER BIDDLE & REATH LLP
1177 Avenue of the Americas, 41st Floor
New York, New York 10036
(212) 248-3140
lawrence.scarborough@faegredrinker.com

Jacob A. Kramer (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
1500 K Street, NW Washington, D.C. 20005
(202) 230-5289
jake.kramer@faegredrinker.com

Emily E. Chow (*pro hac vice*)
FAEGRE DRINKER BIDDLE & REATH LLP
90 S. Seventh Street Minneapolis, MN 55402
(612) 766-8012
emily.chow@faegredrinker.com

Joshua P. Mahoney (*pro hac* vice)
FAEGRE DRINKER BIDDLE & REATH LLP
320 South Canal Street Chicago, IL 60606-5707
(312) 212-6520
josh.mahoney@faegredrinker.com

*Counsel for Defendants Carleton College,*
*Macalester College, and Wesleyan University*

/s/ Alisha Q. Nanda
Alisha Q. Nanda (BBO #657266)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
500 Boylston Street
Boston, Massachusetts 02116
(617) 573-4800
alisha.nanda@skadden.com

Karen Hoffman Lent (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
One Manhattan West
New York, NY 10001
(212) 735-3000
karen.lent@skadden.com

20

Amy L. Van Gelder (*pro hac vice*)
SKADDEN, ARPS, SLATE,
   MEAGHER & FLOM LLP
320 S. Canal St., 47th Floor
Chicago, IL 60606
(312) 407-0700
amy.vangelder@skadden.com

*Counsel for Defendant Columbia University*

/s/  Melissa H. Maxman
Melissa H. Maxman (*pro hac vice*)
Ronald F. Wick (*pro hac vice*)
Derek Jackson (*pro hac vice*)
COHEN & GRESSER LLP
2001 Pennsylvania Avenue NW, Suite 300
Washington, D.C. 20006
(202) 851-2070
mmaxman@cohengresser.com
rwick@cohengresser.com
djackson@cohengresser.com

Alicia L. Downey (BBO # 564265)
DOWNEY LAW LLC
155 Federal Street, Suite 300
Boston, MA 02110
(617) 444-9811
alicia@downeylawllc.com

*Counsel for Defendant Cornell University*

/s/  Kelsey M. Westrich
Kelsey M .Westrich, BBO No. 705615
SAUL EWING LLP
131 Dartmouth Street, Suite 501
Boston, MA  02116
(617) 723-3300
kelsey.westrich@saul.com

Kayleigh T. Keilty (*pro hac vice*)
SAUL EWING LLP
1001 Fleet Street, 9th Floor
Baltimore, MD 21202
(410) 332-8919
kayleigh.keilty@saul.com

21

Christopher D. Dusseault (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
333 South Grand Avenue
Los Angeles, CA 90071
(213) 229-7855
cdusseault@gibsondunn.com

Rachel S. Brass (*pro hac vice*)
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111
(413) 393-8293
rbrass@gibsondunn.com

*Counsel for Defendant Duke University*

/s/  Tina M. Tabacchi
Tina M. Tabacchi (*pro hac vice*)
JONES DAY
110 North Wacker Drive, Suite 4800
Chicago, IL 60606
(312) 782-3939
tmtabacchi@jonesday.com

Peter W. Schwingler (*pro hac vice*)
JONES DAY
90 South Seventh Street, Suite 4950
Minneapolis, MN 55402
(612) 217-8800
pschwingler@jonesday.com

Yvonne W. Chan (BBO# 669223)
JONES DAY
100 High Street, 22nd Floor
Boston, Massachusetts  02110
 (617) 960-3939
ychan@jonesday.com

*Counsel for Defendant Emory University*

22

/s/  Austin Evers
Austin Evers  (#676985)
Eric Mahr (*pro hac vice*)
Heather P. Lamberg (*pro hac vice*)
Jan Rybnicek (*pro hac vice*)
FRESHFIELDS LLP
700 13th Street NW - 10th Floor
Washington, D.C. 20005
(202) 777-4545
eric.mahr@freshfields.com
heather.lamberg@freshfields.com
jan.rybnicek@freshfields.com

*Counsel for Defendants Haverford College,*
*Mount Holyoke College, Middlebury College,*
*Smith College*

/s/  John P. Bueker
John P. Bueker (BBO #636435)
ROPES & GRAY LLP
Prudential Tower 800 Boylston Street
Boston, Massachusetts 02119
(617) 951-7000
John.Bueker@ropesgray.com

Samer M. Musallam *(pro hac vice)*
Elizabeth T. McInerney *(pro hac vice)*
Logan D. Hovie *(pro hac vice)*
ROPES & GRAY LLP
2099 Pennsylvania Avenue NW
Washington, D.C. 20006
(202) 508-4600
Samer.Musallam@ropesgray.com
Elizabeth.McInerney@ropesgray.com
Logan.Hovie@ropesgray.com

*Counsel for Defendant Johns Hopkins University*

/s/  Jack W Pirozzolo
Jack W. Pirozzolo (BBO # 564879)
SIDLEY AUSTIN LLP
60 State Street, 36th Floor
Boston, MA 02109
jpirozzolo@sidley.com
(617) 223-0304

23

Scott D. Stein (admitted *pro hac vice*)
SIDLEY AUSTIN LLP
One South Dearborn St.
Chicago, IL 60603
sstein@sidley.com
(312) 853-7000

*Counsel for Defendant Northwestern University*

/s/  James L. Cooper
James L. Cooper (*pro hac vice*)
Michael A. Rubin (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
601 Massachusetts Avenue, NW
Washington, DC 20001-3743
(202) 942-5000
james.cooper@arnoldporter.com
michael.rubin@arnoldporter.com

Esther Ha Yoon Sohn (*pro hac vice*)
ARNOLD & PORTER KAYE SCHOLER LLP
250 West 55th Street
New York, NY 10019-9710
(212) 836-8000
esther.sohn@arnoldporter.com

H. Tiffany Jang, BBO No. 691380
ARNOLD & PORTER KAYE SCHOLER LLP
500 Boylston Street, 20th Floor
Boston, MA 02116
(617) 351-8050
tiffany.jang@arnoldporter.com

*Counsel for Defendant University of Chicago*

/s/  Andrew S. Dulberg
Andrew S. Dulberg (BBO No. 675405)
WILMER CUTLER PICKERING
    HALE AND DORR LLP
60 State Street
Boston, MA  02109
(617) 526-6000
Andrew.Dulberg@wilmerhale.com

24

David Z. Gringer (*admitted pro hac vice*)
7 World Trade Center
250 Greenwich St.
New York, NY 10007
(212) 230-8800
David.Gringer@wilmerhale.com

*Counsel for Defendant the Trustees of the University of Pennsylvania*

/s/ John F. Baughman
John F. Baughman (*pro hac vice*)
BAUGHMAN KROUP BOSSE PLLC
One Liberty Plaza – 46th Floor
New York, NY 10006
(212) 548-3212
jbaughman@bkbfirm.com

*Counsel for Defendant the University of Rochester*

/s/ J. Mark Gidley
J. Mark Gidley (*pro hac vice*)
WHITE & CASE LLP
701 13th Street N.W.
Washington, DC 20005
(202) 626-3600
mgidley@whitecase.com

C. Kelly Newman
Dan Medici
WHITE & CASE LLP
75 State Street
Boston, MA 02109
(617) 979-9300
kelly.newman@whitecase.com
dan.medici@whitecase.com

Jack E. Pace III (*pro hac vice*)
White & Case LLP
1221 Avenue of the Americas
New York, NY 10020-1095
(212) 819-8200
jpace@whitecase.com

*Counsel for Defendant Vanderbilt University*

25

*/s/  Michael Ryan Meuth*
Michael Ryan Meuth (BBO #714093)
PAUL HASTINGS LLP
200 Clarendon Street
Boston, MA 02116
(617) 912-1652
ryanmeuth@paulhastings.com

Ryan P. Phair (*pro hac vice*)
Christopher C. Brewer (*pro hac vice*)
Jill Rogowski (*pro hac vice*)
Samuel J. Thomas (*pro hac vice*)
PAUL HASTINGS LLP
2050 M Street NW
Washington, D.C. 20036
(202) 551-1700
ryanphair@paulhastings.com
chrisbrewer@paulhastings.com
jillianrogowski@paulhastings.com
samthomas@paulhastings.com

Stephen McIntyre (*pro hac vice*)
PAUL HASTINGS LLP
515 South Flower Street, 25th Floor
Los Angeles, CA 90071
(213) 683-6000
stephenmcintyre@paulhastings.com

*Counsel for Defendant Washington*
*University in St. Louis*

26

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the Reply in Support of Defendants' Joint Motion to Dismiss for Failure to State a Claim has been served on all counsel of record via the Court's ECF system on December 19, 2025.

/s/  *Douglas E. Litvack*
Douglas E. Litvack